Steven R. Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BARRINGTON, individually, and on behalf of a class of similarly situated individuals,<br><br>   Plaintiff,<br><br>  v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company,<br><br>   Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violations of California's Consumers Legal Remedies Act<br>(2) Violations of Unfair Competition Law<br>(3) Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4) Breach of Express Warranty<br>(5) Breach of Written Warranty under the Magnuson-Moss Warranty Act<br>(6) Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(7) Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

1.     Plaintiff Richard Barrington ("Plaintiff") brings this action for himself and on behalf of all persons in the United States who purchased or leased any 2015 to present Chevrolet Corvette Z06 or 2017 to present Chevrolet Corvette Grand Sport vehicle ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by General Motors LLC ("GM" or "Defendant"). Plaintiffs allege as follows:

## INTRODUCTION

2.     This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

3.     General Motors LLC manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles' wheels were defective.

4.     The Class Vehicles are equipped with wheels (a.k.a., rims) that are prone to bending and cracking, necessitating costly repairs and replacements. In addition, cracked rims can cause puncture the tires, causing air leaks and tire blowouts (collectively, the "Rim Defect.")

5.     On information and belief, the Rim Defect occurs because Chevrolet in designing and/or manufacturing these specific Vehicles, which are sub-models of the Corvette line, used rims that are of a cheaper cast material, rather than forged.  They also used less material than necessary in order to try to save unsprung weight (i.e., weight that is not borne by the cars' suspension).  As a result, the rims are not strong enough and crack under normal driving conditions.

6.     The problem is widespread. In fact, during Car & Driver magazine's long-term review of a 2017 Chevrolet Corvette GS, three of its wheels bent, and one of them cracked. The repairs and replacement cost $1,119, which GM

refused to cover under warranty.[1]

7.    The Rim Defect is inherent in each Class Vehicle and was present at the time of sale.

8.    Although GM was sufficiently aware of the Rim Defect from pre-production testing, design failure mode analysis, calls to its customer service hotline, and customer complaints made to dealers, this knowledge and information was exclusively in the possession of GM and its network of dealers and, therefore, unavailable to consumers.

9.    Despite access to aggravate internal data, GM has actively concealed the existence of the defect, telling customers in online forums that the wheels are not defective and that the cracked wheels are caused by potholes.

10.    GM sells the Class Vehicles with a 3-year, 36,000-mile bumper-to-bumper warranty. However, when class members bring their vehicles to GM's authorized dealerships requesting coverage for the Rim Defect, GM is systematically denying coverage. As a result, Class Members are paying thousands of dollars out-of-pocket to repair and replace the wheels.

11.    The Rim Defect is material because it poses a serious safety concern. Cracked rims can cause the tire to fail and explode while driving, leading to a sudden loss of control at speed and a potential collision.

12.    The Rim Defect is also a material fact because consumers incur significant and unexpected repair costs. GM's failure to disclose material facts regarding the Rim Defect at the time of purchase is material because no reasonable consumer expects to spend hundreds, if not thousands, of dollars to repair or replace defective rims.

13.    Had GM disclosed the Rim Defect, Plaintiff and Class Members would not have purchased the Class Vehicles, would have paid less for them.

---

[1] *See* https://www.caranddriver.com/reviews...pdate-3-review.

**THE PARTIES**

**Plaintiff Richard Barrington**

14.     Plaintiff Richard Barrington is a California citizen who resides in Union City, California.

15.     On or around March 29, 2018, Plaintiff Barrington purchased a new 2018 Chevrolet Corvette Grand Sport from Wittmeier Chevrolet, an authorized GM dealer in Chico, California.

16.     Passenger safety and reliability were important factors in Plaintiff Barrington's decision to purchase his vehicle. Before making his purchase, Plaintiff Barrington researched the 2018 Chevrolet Corvette on GM's website and on GM's dealership websites. Based on his research, Plaintiff Barrington believed that the Corvette would be a safe and reliable vehicle.

17.     GM's omissions were material to Plaintiff Barrington. Had GM disclosed its knowledge of the Rim Defect before he purchased his Corvette, Plaintiff Barrington would have seen and been aware of the disclosures. Furthermore, had he known of the Rim Defect, Plaintiff Barrington would not have purchased his vehicle, or would have paid less for it.

18.     Within one or two months of his purchase, Plaintiff Barrington found that his right rear tire was leaking air. Plaintiff Barrington brought his vehicle back to Fremont Chevrolet. The dealership confirmed that the right rear rim was cracked in three places and replaced the rim.

19.     In or around July or August of 2018, Plaintiff Barrington found that the rear driver's side rim was cracked. He brought his vehicle back to Fremont Chevrolet. Again, the dealership confirmed that the rim was cracked. GM refused to cover the necessary rim replacement under warranty. Accordingly, Plaintiff Barrington purchased stock rims himself using the Facebook marketplace.

20.    In or around August 2019, within 2,000 miles or purchase, those two rims had cracked.

21.    On or around November 24, 2019, another of Plaintiff Barrington's rims cracked.

22.    All told, Plaintiff Barrington has had to pay approximately $3,000 to replace six cracked rims on his vehicle.

23.    At all times, Plaintiff Barrington, like all Class Members, has driven his Chevrolet Corvette in a manner both foreseeable and in which it was intended to be used.

**Defendant**

24.    Defendant General Motors LLC is a Delaware limited liability company with its principle place of business located at 300 Renaissance Center, Detroit, Michigan. General Motors LLC is registered to do business in the State of California.  The sole member and owner of General Motors LLC is General Motors Holdings LLC.  General Motors Holdings LLC is a Delaware limited liability company with its principle place of business in the State of Michigan. General Motors Holdings LLC's only member is General Motor Company, a Delaware corporation with its principal place of business in the State of Michigan.  General Motors Company has 100% ownership interest in General Motors Holdings LLC.

25.    General Motors LLC, through its various entities, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in California.  General Motors LLC is the warrantor and distributor of the Class Vehicles in the United States.

26.    At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing,

and selling automobiles and motor vehicle components in Los Angeles County and throughout the United States of America.

## JURISDICTION

27.    This is a class action.

28.    Members of the proposed Class are citizens of states different from the home state of Defendant.

29.    On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

30.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

31.    GM, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate. Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

32.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff Barrington resides in the County of Alameda, California. In addition, Plaintiff Barrington's Declaration, as required under California Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action, is situated in Union City, California. It is attached as Exhibit 1.

## FACTUAL ALLEGATIONS

33.    Since 2014, GM has designed, manufactured, distributed, sold, and leased the Class Vehicles. GM has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles in California and nationwide. GM warrants and services the Class Vehicles through its nationwide network of authorized dealers and service providers.

34.    The rim is a large metal circle on which the tire is placed. The rim creates the shape of the tire and allows it to be mounted to the vehicle.

35.    GM equipped the Class Vehicles with cast aluminum alloy rims. Figure one, below, shows the OEM rims for the Chevrolet Corvette Grand Sport.



36.    The rims are prone to warping and cracking at extremely low mileages. The following complaint to NHTSA describes the circumstance well:

> Noticed a vibration in the car at highway speeds. Took the vehicle into the dealer and was told that the wheel was bent. Service manager stated that this was happening to many Corvettes and was due to the stiffness of the tire and the weakness of the factory wheel. GM has denied a claim under warranty.

*See* paragraph 48(k), *infra*.

37.    The problem is widespread. In a section entitled "Wheel Woes," Car & Driver magazine reported that, during its long-term review of a 2017 Chevrolet Corvette Grand Sport, the vehicle suffered three bent rims and a $1119 repair bill:

> Shortly after its first trip to the test track, however, the Grand Sport showed signs of an ailment that would dog us throughout our time with the car. At just under 6500 miles we discovered that three of its wheels were bent. Two were repaired, but one was cracked and had to be replaced. In all, that was an $1119 trip to the Corvette cobbler, none of which was covered by warranty.[2]

38.    The Rim Defect alleged is inherent in and the same for all Class Vehicles.

### The Rim Defect Poses a Serious Safety Concern

39.    The Rim Defect is material to consumers because it presents a serious safety concern. Cracked rims can cause the tire to fail and explode while driving, leading to a sudden loss of control at speed and a potential collision. In addition, bent rims can cause the vehicle to vibrate which makes the vehicle less stable and can cause driver distraction.

### GM Had Superior and Exclusive Knowledge of the Rim Defect

40.    GM is aware of the Rim Defect and tells its customers that the wheels are not defective and that the cracks are caused by the drivers. GM is also refusing to cover the Rim Defect under warranty.

41.    Corvette owners communicate through online forums such as www.CorvetteForum.com. GM monitors these online forums and communicates with its customers. For example, on August 31, 2017, a Corvette Grand Sport owner wrote:

---

[2] https://www.yahoo.com/news/redemption-2017-chevrolet-corvette-grand-202000878.html

1
2
3
4
5
6
7

> There have been a lot of reports of stock wheels bending on Grand Sports and Z06s here lately, and I've had one of my own front wheels bend on a brand new Grand Sport. In my situation, there was absolutely no damage, scratch or even a mark anywhere—the wheel just went out of round with less than 1,000 miles on the car.
> Why is this happening, is Chevy aware of this happening on more than an isolated occurrence, and what is being done to remedy the situation?[3]

8
9
10
11
12
13
14

42.    On October 18, 2017, GM responded by denying that there had been a "rash" of wheel failures, denying the existence of a defect, and blaming the customer: "A frequent sequence of events is that a wheel gets bent by a road hazard but the damage is initially undetectable to the driver…. Over time fatigue cracks can form after thousands or even millions of cycles."[4] With respect to a remedy, GM only stated that "we will continuously improve our designs and validation procedures based on how the world is changing."

15
16
17

43.    To date, GM continues to refuse to cover the Rim Defect under warranty, and has not issued any relief to the customers who have had to pay thousands out-of-pocket as a result.

18
19
20
21
22
23
24
25

44.    GM also monitors customers' complaints made to the National Highway Traffic Safety Administration ("NHTSA.") Federal law requires automakers like GM to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

26
27
28

---

[3] https://www.corvetteforum.com/forums/ask-tadge/4036656-asked-grand-sport-z06-wheels-bending.html
[4] https://www.corvetteforum.com/forums/ask-tadge/4055813-answered-grand-sport-z06-wheels-bending.html

45.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, GM knew or should have known of the many complaints about the Rim Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, GM to the Rim Defect.

46.    The following are some examples of the scores of complaints concerning the Rim Defect available through NHTSA's website, www.safercar.gov. Many of the complaints reveal that GM, through its network of dealers and repair technicians, was made aware of the cracked rims. In addition, the complaints indicate that despite having knowledge of the defect and the exact vehicles affected, GM blamed the customer and refused to honor its 3-year, 36,000-mile bumper-to-bumper warranty.

    a.  **DATE OF INCIDENT:**    July 20, 2017
       **DATE COMPLAINT FILED:**    September 21, 2017
       **NHTSA/ODI ID:**    11024830
       **SUMMARY:** MY 2016 CORVETTE STARTED HAVING HIGH FREQUENCY VIBRATIONS IN STEERING WHEEL AND INTERIOR PANELS WITH UNDER 7900 MILES OF SERVICE. I COMPLAINED TO THE DEALERSHIP SERVICE DEPARTMENT ABOUT THE PROBLEM AND FOUND FRONT WHEELS TO BE BENT AND COULD NOT BALANCE THE WHEELS PROPERLY. THE DEALERSHIP ADVISED ME TO TAKE MY CORVETTE TO ANOTHER DEALERSHIP THAT HAD BETTER EQUIPMENT THAN THEM. THE SECOND DEALERSHIP INSPECTED MY CORVETTE AND INFORMED ME THAT ALL FOUR WHEELS ARE BENT AND CANNOT BALANCE THEM PROPERLY. NEITHER DEALERSHIP WILL REPLACE THE WHEELS UNDER WARRANTY. THUS FAR, GM AS WELL, WILL NOT REPLACE WHEELS UNDER WARRANTY. I ATTEST THAT I HAVE NOT

DRIVEN MY CORVETTE ABNORMALLY NOR HAVE HIT OBSTRUCTIONS OR POT HOLES. I HAVE NEVER DRIVEN MY CORVETTE ON ROUGH, GRAVEL OR DIRT ROADS. I DO BELIEVE THIS IS A VERY SERIOUS SAFETY PROBLEM THAT CHEVROLET AND GM SHOULD ADDRESS BEFORE SOMEONE HAS A TERRIBLE ACCIDENT BECAUSE OF THESE WHEELS!

a. **DATE OF INCIDENT:** August 19, 2017
**DATE COMPLAINT FILED:** September 20, 2017
**NHTSA/ODI ID:** 11024700
**SUMMARY:** BOTH LEFT WHEELS ON MY 2017 GRAND SPORT BENT IN NORMAL DRIVING OVER NORMAL ROADS. IN RESEARCHING THE ISSUE, THIS SEEMS TO BE A RECURRING PROBLEM WITH THE STOCK WHEELS ON 2017-2018 CORVETTE GRAND SPORTS AND 2015-18 CORVETTE Z06S. GM AGREED TO REPLACE THE FRONT WHEEL, BUT THE DEALER DIDN'T REALIZE THE REAR WAS ALSO BENT (NO VISIBLE DAMAGE TO EITHER WHEEL, THE WHEELS ARE JUST NOT STRONG ENOUGH). GM IS NOW CLAIMING THEY WON'T FIX/REPLACE THE REAR WHEEL. CAR VIBRATES BECAUSE OF THE BENT WHEEL.

b. **DATE OF INCIDENT:** October 13, 2017
**DATE COMPLAINT FILED:** October 20, 2017
**NHTSA/ODI ID:** 11035178
**SUMMARY:** TL* THE CONTACT OWNS A 2015 CHEVROLET CORVETTE. WHILE THE CONTACT WAS HAVING TIRES INSTALLED AT BILL STASEK CHEVROLET (700 W DUNDEE RD, WHEELING, IL), HE WAS INFORMED THAT ALL THE RIMS WERE CRACKED AND THE REAR PASSENGER WHEEL WAS LEAKING. THE MANUFACTURER WAS NOTIFIED OF THE FAILURES. THE FAILURE MILEAGE WAS APPROXIMATELY 13,466.

c. **DATE OF INCIDENT:**     December 20, 2017
**DATE COMPLAINT FILED:**     October 18, 2018
**NHTSA/ODI ID:**     11141356
**SUMMARY:** CRACKED REAR WHEEL. I PURCHASED THE CAR USED AND THIS WAS DISCOVERED DURING AN

INSPECTION.

d. **DATE OF INCIDENT:**    January 8, 2018
   **DATE COMPLAINT FILED:**    January 10, 2019
   **NHTSA/ODI ID:**    11166176
   **SUMMARY:** BOTH OF MY OEM REAR WHEELS (SPECTRA GRAY - 10 SPOKE), HAVE DEVELOPED CRACKS REQUIRING REPLACEMENT AT MY EXPENSE. DESPITE MY CORVETTE BEING ON WARRANTY AND A HIGH PERFORMANCE, SPORTS CAR WHICH IS REGULARLY SERVICED, THE CHEVROLET DEALERSHIP REFUSES TO REPLACE THESE WHEELS, EXCEPT AT MY EXPENSE, CITING THAT POOR ROAD CONDITIONS IN CALIFORNIA ARE BLAME FOR THE FRACTURES, RUNNING HORIZONTALLY ON THE RIM LIP. THE FRACTURES CREATE A VERY DANGEROUS SITUATION GIVEN HIGH TORQUE LEVELS, LOW PROFILE TIRES WITH A WIDE STANCE. THE TIRES AND THE SUSPENSION ARE DESIGNED FOR HIGH PERFORMANCE, AND HIGH G FORCE, BUT WHEELS ARE APPARENTLY FLAWED FOR THE DESIGNED TOLERANCES IMPOSED BY DRIVING A HIGH PERFORMANCE CORVETTE. MY CAR RAPIDLY LOSS AIR PRESSURE AT FREEWAY SPEEDS AND THE AIR PRESSURE WARNING LIGHT ACTIVATED IN BOTH OCCASIONS, WARNING OF THE HAZARDOUS CONDITION.

e. **DATE OF INCIDENT:**    February 2, 2018
   **DATE COMPLAINT FILED:**    February 6, 2018
   **NHTSA/ODI ID:**    11067302
   **SUMMARY:** I PURCHASED AN OPTIONAL CHROME WHEEL UPGRADE WHICH WAS DELIVERED WITH NEW VEHICLE. RIGHT REAR WHEEL CRACKED AND LOST AIR PRESSURE AFTER 4,000 MILES, LEFT REAR WHEEL CRACKED AND LOST AIR PRESSURE AFTER 6,800 MILES.

f. **DATE OF INCIDENT:**    June 11, 2018
   **DATE COMPLAINT FILED:**    July 5, 2018
   **NHTSA/ODI ID:**    11109750
   **SUMMARY:** BOTH REAR WHEELS DEVELOPED CRACKS APPROXIMATELY TWO INCHES LONG FROM THE INSIDE EDGE TOWARD THE MIDDLE OF THE WHEEL. THE CRACKS

IN BOTH WHEELS WERE SIMILAR IN SIZE AND LOCATION. MILEAGE WHEN NOTICED WAS 24,000. NUMEROUS REPORTS OF THE SAME ISSUE ARE BEING REPORTED ON CORVETTE RELATED WEB SITES.

g.  **DATE OF INCIDENT:** August 4, 2018
    **DATE COMPLAINT FILED:** September 27, 2018
    **NHTSA/ODI ID:** 11131995
    **SUMMARY:** HAD 3 OF THE 4 RIMS BEND, PER THE DEALER DIAGNOSIS, FOR NO APPARENT REASON. CAR HAD 2,000 MILES ON IT. IT SEEMS TO BE A SYSTEMIC PROBLEM. THERE ARE MULTIPLE POSTS ABOUT THIS ISSUE, ALONG WITH THE WHEELS CRACKING FOR NO REASON, AT THE FOLLOWING INTERNET FORUM;

    HTTPS://WWW.CORVETTEFORUM.COM/FORUMS/C7-GENERAL-DISCUSSION-142/

    IN MY INSTANCE THE CAR DROVE FINE THE EVENING BEFORE (I'D ACTUALLY PICKED IT UP FROM THE DEALER THE SAME DAY AS THEY REPAIRED ANOTHER ISSUE). GOT IN THE CAR THE NEXT MORNING TO GO TO WORK AND NOTICED THE BAD VIBRATION. I THOUGHT A WHEEL WEIGHT HAD FALLEN OFF. TOOK IT TO THE DEALER AND AFTER DIAGNOSIS THEY INFORMED ME THAT 3 OF THE 4 RIMS WERE BENT (BOTH PASSENGER SIDE AND DRIVER REAR).

h.  **DATE OF INCIDENT:** August 5, 2018
    **DATE COMPLAINT FILED:** October 18, 2018
    **NHTSA/ODI ID:** 11141268
    **SUMMARY:** GM IS PUTTING DEFECTIVE WHEELS ON GRAND SPORT AND Z06 CORVETTES. THESE WHEELS WILL NOT WITHSTAND NORMAL DRIVING ON ANY HIGHWAY. THE ISSUE IS THAT THESE WHEELS BEND ON IMPACT, BE IT EXPANSION JOINTS ALONG BRIDGES OR SMALL IMPERFECTIONS IN THE ROADWAY THAT OTHER CARS HANDLE EVERY DAY.

    THE ISSUE IS THAT GM SAYS THESE ARE ROAD HAZARDS AND THEY ARE NOT RESPONSIBLE. THE WHEELS WERE

NOT ENGINEERED TO TAKE NORMAL DRIVING ON ROADS ANYWHERE.

THIS STARTED IN JUNE AFTER A TRIP I TOOK AND THE CAR PICKED UP A VIBRATION. TOOK IT TO S DEALER AND HE SAID THE WHEELS WERE BENT AND NOT COVERED UNDER WARRANTY AND WOULD SELL ME NEW ONES 2 FRONT WHEELS FOR ABOUT $1800. I THEN TOOK THE CAR HOME AND TOOK THE FRONT WHEELS OFF AND HAD THEM STRAIGHTENED AT A COST OF $110 EACH. I THOUGHT THAT TOOK CARE OF THE PROBLEM SO WE DROVE THE CAR ON ANOTHER TRIP TO NOVA SCOTIA, CANADA. WE WERE ON A TRIP AND LOST AIR IN THE LEFT FRONT TIRE ( PICTURE BELOW ) IT HAD WORN ALL THE WAY DOWN THROUGH ALL THE BELTS DUE TO THE WHEELS BEING BENT AGAIN. SEE ALL 3 PICTURES.

THESE WHEELS ARE A SAFETY HAZARD FOR THESE CARS TO USE ON PUBLIC HIGHWAYS AS THEY DEVELOP CRACKS AND CAUSE SEVERE TIRE WEAR IN SHORT PERIODS OF TIME.

I HAD ANOTHER SET OF BRAND NEW WHEELS AT HOME. I HAD TO COME BACK HOME AND GET THEM AND TAKE THEM BACK TO CANADA TO GET MY CAR HOME. ON THE 1700 MILE TRIP BACK THE CAR DEVELOPED A VIBRATION AND WHEN I TOOK IT BACK TO MY TIRE DEALER HE SAID THAT THE RIGHT FRONT WHEEL WAS BENT.

THE BIG ISSUE IS GM DOES NOT TRACK THESE ISSUES IF YOU DO NOT BUY THE NEW WHEELS FROM THEM AND IT GOES UNREPORTED. A FRIEND OF MINE WHO HAS LESS THAN 5000 MILES ON HIS 2019 NEEDS TO BUY 4 WHEELS AND 4 TIRES AND THE DEALER EVEN TOLD US THERE WERE 2 PEOPLE THE WEEK BEFORE THAT HAD BENT RIMS ON I-71.

i. **DATE OF INCIDENT:** August 25, 2018
   **DATE COMPLAINT FILED:** November 2, 2018
   **NHTSA/ODI ID:** 11145056
   **SUMMARY:** AFTER DRIVING THE CAR THE TIRE PRESSURE

WARNING CAME ON AND WE STARTED NOTICING THE TIRE PRESSURE LEAKING ON THE RIGHT REAR OF MY WIFE GRAND SPORT CORVETTE, THE WHEEL WAS TAKEN OFF TO INVESTIGATE THE CAUSE OF LEAK. IT WAS DISCOVERED THAT THERE WAS A CRACK ALONE THE BEAD RING AREA OF THE INSIDE DRUM AREA OF THE WHEEL. THE DEALERSHIP REFUSED TO COVER UNDER WARRANTY AND DIDN'T OFFER REPAIRS. THE WHEEL WAS TAKEN TO A REPUTABLE WHEEL REPAIR SHOP WITH A GUARANTEE ON THE REPAIR. AFTER DRIVING THE CAR APPROXIMATELY 1000 MILE THE SAME WHEEL STARTED TO LEAK AGAIN. AFTER REMOVING THE WHEEL THERE WAS ANOTHER CRACK APPROXIMATELY 180 DEGREES FROM THE REPAIRED CRACK. AFTER REFUSING TO DRIVE THE VEHICLE TO THE DEALERSHIP WITH A CRACKED WHEEL, IT WAS REMOVED FROM THE CAR AND TAKEN TO THE DEALERSHIP AND ALSO CALLED THE GM PRIORITY CARE AT 866-636-2273. GM PRIORITY CARE GAVE ME THE CASE NUMBER 8-4778215369 . THE DEALERSHIP STILL REFUSED TO COVER THE WHEEL UNDER WARRANTY BUT OFFERED TO SELL ME ANOTHER WHEEL FOR $250. THE VEHICLE CURRENTLY HAS 19000MILES AND IS MY WIFE'S DAILY DRIVER FOR WORK. THE CAR HAS NOT BEEN ABUSED OR INVOLVED IN ANY ACCIDENTS. IT HAS BEEN PAINTED DUE TO SCRATCHES FROM TORNADO WIND DAMAGE. I TOOK PICTURES BEFORE THE REPAIR WAS MADE AND ADDITIONAL PICTURE OF THE SECOND CRACK IN THE SAME WHEEL. IN MY OPINION THE DEALERSHIP SHOULD HAVE REPLACED THE WHEEL WHEN THE FIRST CRACK OCCURRED. NOW I HAVE NO CONFIDENCE IN THE QUALITY OF THE GRAND SPORT WHEELS AND WILL REFUSE THEIR OFFER OF GETTING A WHEEL FOR $250. AFTER CHECKING WITH AN AFTERMARKET WHEEL COMPANY FOR REPLACEMENT WHEELS, THEY NOTIFIED ME THAT GM IS AWARE THERE IS AN ISSUE WITH THE GRAND SPORT WHEEL AND THAT I SHOULD TAKE IT TO THE DEALERSHIP FOR REPLACEMENT. THE CAR IS CURRENTLY NOT SAFE TO DRIVE UNTIL I GET A REPLACEMENT WHEEL. SEE ATTACHED PHOTOS OF THE FIRST AND SECOND CRACK IN THE WHEEL.

j. **DATE OF INCIDENT:**    September 14, 2018
**DATE COMPLAINT FILED:**    September 26, 2018
**NHTSA/ODI ID:**    11131647
**SUMMARY:** WHEN I TOOK THE CAR INTO A DISCOUNT TIRE STORE TO HAVE NEW TIRES PUT ON THE BACK AT ABOUT 15,600 MILES ON THE CAR CRACKS WERE FOUND ON THE INSIDE RIM WHERE TIRE BEAD SEALS OF BOTH BACK WHEELS. PROBLEM WAS IMMEDIATELY REPORTED TO DEALER WHO VERIFIED CRACKS, BUT DEALER AND GM REFUSED TO REPLACE UNLESS I PURCHASE NEW WHEELS FOR DISCOUNTED PRICE OF $1,100.00 FOR REAR WHEELS ONLY. SPOKE WITH REPRESENTATIVES OF GM ENGINEERING AND FOUND PROBLEM IS A KNOWN ISSUE WITH REAR WHEEL CRACKING GOING BACK SEVERAL YEARS WITH CAST CHINA MADE WHEELS ON CORVETTE Z06 AND ZR1 MODELS. I WAS TOLD GM CORVETTE CHIEF ENGINEER HAS POSTED INFORMATION ON THE WHEEL CRACKING PROBLEM ON CORVETTE FORUM AND ONLY WAY TO NOT HAVE WHEEL CRACKING PROBLEM ON REPLACEMENT WHEELS WOULD BE TO NOT DRIVE ON ROADS WITH BUMPS OR POT HOLES. THEY AGREED THIS WAS NOT REALISTIC BUT GM STANDS FIRM ON PAYMENT FOR NEW WHEELS WITH NO ASSURANCE THIS WILL SOLVE THE PROBLEM. MY COMPLAINT WAS CLOSED AT GM AS CUSTOMER DECLINED REDUCED PRICE OFFER AND IS DISSATISFIED. CRACKING WHEELS SHOULD BE A MAJOR SAFETY CONCERN AND ESPECIALLY WITH CARS THAT HAVE THIS MUCH POWER TO THE WHEELS AND ARE CAPABLE OF THE SPEEDS THESE MODEL CARS CAN OBTAIN. THIS IS TOTALLY IRRESPONSIBLE OF GM TO ALLOW THIS TO HAPPEN AND NOT RECALL THE WHEELS AND REPLACE THEM WITH ONES THAT DO NOT CRACK, ESPECIALLY ON CARS WITH SUCH LOW MILEAGE.

k. **DATE OF INCIDENT:** September 25, 2018
**DATE COMPLAINT FILED:** December 17, 2018
**NHTSA/ODI ID:** 11161931
**SUMMARY:** NOTICED A VIBRATION IN THE CAR AT HIGHWAY SPEEDS. TOOK THE VEHICLE INTO THE DEALER AND WAS TOLD THAT THE WHEEL WAS BENT. SERVICE

MANAGER STATED THAT THIS WAS HAPPENING TO MANY CORVETTES AND WAS DUE TO THE STIFFNESS OF THE TIRE AND THE WEAKNESS OF THE FACTORY WHEEL. GM HAS DENIED A CLAIM UNDER WARRANTY.

l.  **DATE OF INCIDENT:** October 17, 2018
    **DATE COMPLAINT FILED:** December 13, 2018
    **NHTSA/ODI ID:** 11161140
    **SUMMARY:** FOUR REAR WHEELS HAVE CRACKED LEAKING AIR AND HAVE NO EXTERNAL DAMAGE FROM ROAD HAZARDS. TWO WERE REPLACED UNDER THE NEW CAR WARRANTY AND TWO WERE REPLACED UNDER GM'S PURCHASED EXTENDED WARRANTY. THE FIRST ONE, RIGHT REAR, CRACKED ON 11/19/16 WITH 18,843 MILES ON THE CAR. THE SECOND ONE,LEFT REAR, CRACKED ON 8/23/17 WITH 24,332 MILES ON THE CAR. THE THIRD ONE,LEFT REAR, CRACKED ON 8/14/18 WITH 34,854 MILES ON THE CAR. THE FOURTH ONE, RIGHT REAR, CRACKED ON 10/17/18 WITH 39,501 MILES ON THE CAR. CALLING THE GM HOT LINE I WAS TOLD TO CONTACT MY GM SERVICE DEPARTMENT IN REGARDS TO THIS ISSUE. THEY TOLD ME THE THE WHEEL WAS DESIGNED TO CRACK TO PROTECT THE REAR SUSPENSION !!! THIS IS A HUGE SAFETY ISSUE. WHAT WOULD HAPPEN IF THAT CRACK LEAD TO A WHEEL FAILURE AT SPEED? I HAVE ALL MY GM SERVICE STATEMENTS TO BACK THESE FACTS UP. GM NEEDS TO CORRECT THE PROBLEM!

m.  **DATE OF INCIDENT:** October 31, 2018
    **DATE COMPLAINT FILED:** January 5, 2019
    **NHTSA/ODI ID: 10954629**
    **SUMMARY:** CRACKED WHEEL AFTER DRIVING OVER SMALL POTHOLE ON THE INTERSTATE CAUSING CRACK IN RIM AND SLOW LOSS OF TIRE AIR PRESSURE. CRACK IN REAR WHEEL INBOARD FLANGE, WHEEL WAS NOT BENT OR WARPED.

n.  **DATE OF INCIDENT:** November 1, 2018
    **DATE COMPLAINT FILED:** November 14, 2018
    **NHTSA/ODI ID:** 11151459
    **SUMMARY:** TL* THE CONTACT OWNS A 2016 CHEVROLET

CORVETTE. THE CONTACT STATED THAT THERE WAS A FAILURE CONCERNING THE REAR OEM FACTORY RIMS. THE CONTACT STATED THAT THE METAL WAS NOT STRUCTURALLY SOUND AND THERE WERE CRACKS IN THE REAR PASSENGER SIDE WHEEL. THE FAILURE LED TO LOW TIRE PRESSURE. THE DEALER (GEORGE MATICK CHEVROLET, 14001 TELEGRAPH RD, REDFORD CHARTER TWP, MI 48239, (313) 531-7100) REPLACED THE OEM FACTORY RIM. THE DEALER ALSO MENTIONED THAT THEY RECEIVED SEVERAL COMPLAINTS FOR THE SAME MODEL, BUT VARIOUS YEARS, CONCERNING THE OEM REAR RIMS CRACKING AND THE LOW TIRE PRESSURE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS NOT AVAILABLE. *TT *TR

o. **DATE OF INCIDENT:** November 1, 2018
**DATE COMPLAINT FILED:** November 2, 2018
**NHTSA/ODI ID:** 11145000
**SUMMARY:** 2017-2019 CORVETTE GRAND SPORT HAS A HIGH NUMBER OF REPORT INSTANCES OF RIMS CRACKING AND BENDING THAT FORUM MEMBERS FEEL IS NOT NORMAL, NOT DUE TO HITTING POTHOLES OR ANYTHING. I HAD NEVER HIT ANY POTHOLES OR ANYTHING HARD, AND WHILE HAVING MY TIRES CHANGED, THE SHOP SHOWS ME A CRACK IN THE RIM. ON THE BLOG SITE "CORVETTE FORUM", THERE'S NUMEROUS PEOPLE AND PICTURES OF PEOPLE SHOWING THEIR CRACKED OR BENT RIMS. GM IS TELLING PEOPLE THIS IS NORMAL WEAR AND TEAR AND NOT DEALING WITH IT. THIS IS NOT NORMAL. SEVERAL PEOPLE HAVE REPORTED MULTIPLE TIRES BENT OR CRACKED. PLEASE INVESTIGATE. I'M SURE GM DOES NOT HAVE ACCURATE DATA, PEOPLE MOST PEOPLE REPORT THE DEALER TURNS THEIR CLAIM AWAY AS NOT BEING COVERED, SO IT'S NOT GETTING FULLY REPORTED. THIS APPEARS TO BE A PROBLEM ONLY WITH THE GRAND SPORT MODEL.

p. **DATE OF INCIDENT:** December 20, 2018
**DATE COMPLAINT FILED:** December 21, 2018
**NHTSA/ODI ID:** 11163031
**SUMMARY:** I HAD A SLOW LEAK IN A REAR TIRE ON A Z06

WHEEL. THE TIRE SHOP FIXED THE LEAK AND INFORMED ME THE WHEEL WAS BENT. THE CAR WAS BOUGHT NEW AND HAS ONLY 2000 MILES ON THE ODO. I CANNOT RECALL HITTING A LARGE POTHOLE OR RUNNING OVER ANYTHING

q. **DATE OF INCIDENT:** January 2, 2019
   **DATE COMPLAINT FILED:** February 13, 2019
   **NHTSA/ODI ID:** 11179916
   **SUMMARY:** WE HAVE HAD TO REPAIR THEN REPLACE 2 REAR CRACKED RIMS IN THE 1.5 YEARS WE HAVE OWNED THIS VEHICLE. THE FIRST ONE WAS 3 MONTHS AFTER PURCHASING IT AND THE SECOND ONE WAS IN JANUARY 2019. AFTER NOTICING BOTH TIMES THAT FIRST THE LEFT TIRE WAS LOSING AIR A HAIRLINE CRACK WAS NOTICED ON THE INSIDE OF THE RIM. WE HAD IT REPAIRED AND IT DID NOT LAST SO FOR SAFETY REASONS WE NEEDED TO REPLACE IT. THE SAME THING HAPPENED WITH THE RIGHT SIDE IN LATE 2018. IT WAS AGAIN SUGGESTED WE REPAIR IT, THEN AGAIN THE REPAIR DID NOT HOLD AND WE NEEDED TO REPLACE.

r. **DATE OF INCIDENT:** January 14, 2019
   **DATE COMPLAINT FILED:** January 29, 2019
   **NHTSA/ODI ID:** 11172809
   **SUMMARY:** 2 BENT WHEELS UNDER (BETTER THAN) NORMAL DRIVING CONDITIONS ON MY 2017 CORVETTE GRAND SPORT. GARAGE KEPT/COVERED. PRISTINE 2-YEAR-OLD CAR WITH 7000 MILES. SERVICE DEPT ALERTED ME TO THE BENDS DURING SCHEDULED MAINTENANCE AND WHILE INVESTIGATING A PULSING PROBLEM IN THE FRONT BRAKE ROTORS.

   THE VEHICLE IS HARDLY EVER DRIVEN, HAS NEVER SEEN ROUGH ROADS/CITY STREETS/BAD WEATHER/ETC. THE VEHICLE HAS NEVER BEEN "TRACKED" OR OTHERWISE ABUSED. THIS IS A "SUMMER ONLY," WEEKEND VEHICLE THAT HAS BEEN IMPECCABLY MAINTAINED.

   THERE ARE NO VISIBLE SCUFFS/SCRAPES/BENDS/BULGES OR OTHER DAMAGE TO THE TIRES OR WHEELS. NEVER HIT

ANY POTHOLE/ROAD HAZARD/DEBRIS, *EVER.*

BASED ON RECENT ONLINE RESEARCH AND INFORMATION FROM THE SERVICE MANAGER, I'M NOW CONCERNED THAT THESE WHEELS WILL TOTALLY CRACK OR OTHERWISE DEFORM WHILE DRIVING. THIS IS AN ACCIDENT WAITING TO HAPPEN.

AFTER OPENING A CASE (9-5012193448) AND OVER AN HOUR ON THE PHONE, GM HAS DENIED A WARRANTY CLAIM AND WILL NOT FURTHER DISCUSS/ESCALATE THIS ISSUE. GM WOULD NOT PROVIDE A DESCRIPTION OR COPY OF THE METHOD USED TO DETERMINE "DEFECT VS.DAMAGE", OR A WRITTEN COPY OF THE EVALUATION MADE BY THE REGIONAL WARRANTY REP.

GM REFUSES TO DISCLOSE ANY INFORMATION REGARDING OTHER INSTANCES OF THIS PROBLEM, WILL NOT REPLACE/REPAIR THE DEFECTIVE WHEELS, AND WILL NOT PAY FOR A SUITABLE/COMPARABLE 3RD PARTY REPLACEMENT.

I'VE ALSO READ ABOUT OTHER OWNERS HAVE THE SAME ISSUES VIA THESE LINKS:

HTTPS://WWW.CARANDDRIVER.COM/REVIEWS/A23705281/ 2017-CHEVROLET-CORVETTE-GRAND-SPORT-RELIABILITY/

HTTPS://WWW.CORVETTEFORUM.COM/FORUMS/C7-GENERAL-DISCUSSION/4161059-2018-GRAND-SPORT-CRACKED-RIM.HTML

HTTP://WWW.CARPROBLEMZOO.COM/CHEVROLET/CORVE TTE/WHEEL-PROBLEMS.PHP

s. **DATE OF INCIDENT:** January 19, 2019
**DATE COMPLAINT FILED:** January 21, 2019
**NHTSA/ODI ID:** 11171195
**SUMMARY:** THE WHEELS ON MY VEHICLE ARE CRACKED ON THE REAR PASSENGER SIDE. I PICKED UP MY (NEW)

CAR FROM LAMARQUE AUTO DEALER IN NEW ORLEANS AND DROVE HOME TO BEAUMONT. WHEN I GOT TO BEAUMONT, THE LOW TIRE PRESSURE WARNING CAME ON. SO TODAY (1-21-19) I TOOK CAR TO DISCOUNT TIRE AND THEY FOUND THAT MY WHEEL IS CRACKED. I' ASSUMING IT CRACKED WHILE DRIVING OVER 200 MILES ON I-10 HEADED HOME.

t. **DATE OF INCIDENT:** January 27, 2019
**DATE COMPLAINT FILED:** February 20, 2019
**NHTSA/ODI ID:** 11181387
**SUMMARY:** 2017 CORVETTE GRAND SPORT, PURCHASED IN JUNE OF 2017, ONLY USED ON WEEKEND AND THE CURRENT MILEAGE IS ONLY 930.

JUST NOTICED A VIBRATION IN THE FRONT END WHEN TRAVEL ON HIGHWAY AT SPEED 55+.

BRING THE CAR TO THE DEALERSHIP FOR INSPECTION AND THE SERVICE MANAGER INFORM ME ALL 4 WHEELS HAS BEEN BEND AND NEED TO BE REPLACE.

FILE A CASE (9-5019078980) WITH GM CUSTOMER CARE CENTER AND AFTER 1 WEEK, GM CENTER CALLED AND TOLD ME THIS IS NOT COVER UNDER THE FACTORY WARRANTY. VERY DISAPPOINT AND LOOSING TRUST IN GM PRODUCT RELATED TO QUALITY, RELIABILITY AND SAFETY CONCERN FOR THE CONSUMERS.

THIS PROBLEM WITH THE FACTORY WHEEL BENDING OR CRACKING HAS BEEN REPORT AND LISTED IN SEVERAL CORVETTE FORUM AND MOST ARE RELATED TO THE 2017-2019 GRAND SPORT MODEL.

HOPEFULLY THERE WILL BE AN INVESTIGATION OPEN SOON TO PREVENT ANY FURTHER DAMAGE CAUSING SERIOUS ACCIDENT SIMILAR TO THE AIR BAG PROBLEMS.

u. **DATE OF INCIDENT:** February 22, 2019
**DATE COMPLAINT FILED:** March 1, 2019
**NHTSA/ODI ID:** 11183573

**SUMMARY:** ON OR ABOUT SEPTEMBER 11, 2018 I NOTICED MY RIGHT FRONT TIRE WAS LOW ON AIR. I TOOK IT TO LES SCHWAB TIRE AND THEY REPAIRED A LEAK FROM A SCREW. A COUPLE OF DAYS LATER I NOTICED THE TIRE WAS STILL GOING LOW I TOOK IT BACK AND THEY INFORMED ME THAT IT HAD A CRACKED WHEEL. I PURCHASED A NEW WHEEL FROM CHEVROLET AND HAD LESS SCHWAB INSTALL IT FOR ME . I JUST RECENTLY 2/22/2019 PUT NEW TIRES ON THE CAR AND THE DEALERSHIP NOTED THE BRAND NEW WHEEL I PUT ON THE RIGHT REAR HAS CRACKS IN IT NOW AS WELL AS THE LEFT REAR WHEEL WHICH IS LOSING AIR. THESE WHEELS ARE EXPENSIVE I BELIEVE THEY RETAIL FOR $800 EACH AT THE DEALER AND ARE DEFECTIVE AND DANGEROUS. MOST OF OUR MILES ARE HIGHWAY MILES DRIVING BETWEEN SAN JOSE CALIFORNIA AND ELK GROVE CALIFORNIA BETWEEN MY OFFICES.

v. **DATE OF INCIDENT:** March 1, 2019
**DATE COMPLAINT FILED:** March 2, 2019
**NHTSA/ODI ID:** 11183598
**SUMMARY:** FACTORY WHEELS CRACKED FROM NORMAL DRIVING ON THE INNER LIP, TIRE MECHANIC ADVISED HE'S SEEN MANY OF THESE ON THE Z06 WHEELS AND IT'S A KNOWN PROBLEM HOWEVER GM WON'T COVER THE DEFECTIVE WHEELS UNDER WARRANTY. THE CRACKED WHEEL CAUSES A SLOW LEAK END EVENTUALLY CAN BREAK IF GONE UNDETECTED RESULTING IN A LOSS OF CONTROL OF THE VEHICLE.

w. **DATE OF INCIDENT:** March 18, 2019
**DATE COMPLAINT FILED:** April 10, 2019
**NHTSA/ODI ID:** 11195307
**SUMMARY:** CORVETTE REAR WHEEL WAS LOSING AIR SO INSPECTED TIRES AND FOUND NO HOLES. WENT TO CORVETTE FORUM TO LEARN THIS IS A KNOWN PROBLEM ON Z06 AND GRAND SPORTS. SEEMS GM HAS A PROBLEM WITH CRACKING. MY CRACK IS EXACTLY WHAT THE FORUM MEMBERS HAVE. HAIRLINE CRACK IN THE RIM ON THE NON-HUB SIDE. THIS IS A SAFETY ISSUE AS THE RIM COULD COME APART AT SPEED AND CAUSE A SERIOUS

ACCIDENT. I HAVE NO OTHER DAMAGE TO THE WHEEL AND HAVE NOT HAD ANY CURB DAMAGE. I BABY THIS CAR AND THE SAME CRACK THAT MANY OTHERS HAVE EXPERIENCED APPEAR.

**Customer Complaints on Third-Party Websites**

47.    Consumers similarly complained about the defect on various online forums. Below are some examples.

a. **August 31, 2017:** There have been a lot of reports of stock wheels bending on Grand Sports and Z06s here lately, and I've had one of my own front wheels bend on a brand new Grand Sport. In my situation, there was absolutely no damage, scratch or even a mark anywhere - the wheel just went out of round with less than 1000 miles on the car.

   Why is this happening, is Chevy aware of this happening on more than an isolated occurrence, and what is being done to remedy the situation? Will you improve the strength of these Chinese-made wheels and offer a recall/replacement? (*Available at* https://www.corvetteforum.com/forums/ask-tadge/4036656-asked-grand-sport-z06-wheels-bending.html)

b. **September 13, 2017:** I have 3 bent and one broken wheel and have never hit anything hard enough to do this kind of damage. Dealer did not diagnose the problem however did tell me to stop driving in sport mode. (*Id.*)

c. **September 20, 2017:** In for a response. We have had a few customers and a trade-in (all C7 Z's) with 3 or 4 bent wheels per car. Thankfully we have sourced a company that will repair the wheels, much cheaper than replacing. This is clearly a defect if this is as common as it seems. (*Id.*)

d. **October 20, 2017:** I have several [bent] rims, probably seven, I'll have to count all of them. They are all in the rear and none of them were from hitting anything that is worse than any other expansion joint or imperfection in the road. I'm very careful not to hit potholes. The roads I travel on are actually in very good shape. (*available at* https://www.corvetteforum.com/forums/c7-general-

discussion/4056471-have-you-had-a-wheel-
bend.html#post1595799836)

e. **October 20, 2017:** Five bent wheels within the first 2,700 miles. Currently have 6,700 miles on my C7Z. All were bent on public streets. The first four were all bent at the same time from a pothole that was kind of hidden in the shadows and I tried to straddle at about 35 mph, it didn't work. The fifth was a very minor bump coming off a freeway bridge at 55 mph. Couldn't feel any vibration until 45+ mph with any of these. (*Id.*)

f. **October 22, 2017:** Fast forward several months, I return to the same dealership regarding the vibration issue which had gotten progressively worse. At that time, the dealership informed me that all four rims were bent. I've since heard that driving in Sport mode could result in bent wheels. Available at (*Id.*)

g. **May 8, 2018:** Yes...I have just been informed by my dealer that My C7 Z06 has two bent wheels.
They caused the car to have a rythmic vibration. Only 3000 miles and no evidence of damage and I have no recollection of any road hazards hit. I noticed the vibration right after taking a very hard off ramp ! (*Id.*)

h. **June 20, 2018:** 2 front wheels bent on a 2017 GS. (*Id.*)

i. **June 20, 2018:** I took my 2017 GS in today for a vibration. They say all four wheels are bent! (*Id.*)

j. **June 24, 2018:** I had a shimmy in the steering wheel on my 2017 GS. It seems I had 3 bent wheels and a cracked wheel. Insurance company purchased through the dealer is being a real pain. They want to give me a $650 wheel for the one that was cracked even though the GM price is over $900 for the Chrome clad. The other 3 have been straightened and are perfect. Now to fight for a GM wheel and an alignment.... (*Id.*)

k. **June 27, 2018:** The verdict is in, they tell me that 3 of the wheels are BENT?!? I haven't even hit as much as a pothole and 3 of the 4 wheels are bent?!?! WTF?!?!

The LR wheel and both Right (Front and Rear) are bent according to

the dealer. They said that one of the right ones, I'm so pissed I don't even remember which one they told me, was so bent that you didn't have to spin it to see it. And OF COURSE they are not covered under warranty. (*Id.*)

l. **June 28, 2018:** 2018 GS had all 4 wheels bent and a cracked one also, I believe from potholes at highway speeds. Drove it from Maryland to Colorado. Put new Z06 style wheels on and waiting for an answer from the T&W insurance. Couldn't wait for them to make a decision and not drive my car. Now it rides fantastic. (*Id.*)

m. **October 11, 2018:** I have a 2017 GrandSport Corvette, 10K miles. Purchased 10/20/17. I have bent a total of 6 rims. First 2 rims were bent in May. All 4 rims were bent in June.
My insurance replaced the first 2 bent rims with new ones. I hit a small pothole on the highway. I was shock that the rims bent so easy. The next month I bent all 4 rims, paid $700 to get the 4 bent rims straighten, trying to save money. The 4 rims later kept re-bending so I lost my money. I ended up just purchasing forged rims from Cray. I have owned 3 corvettes; I have never bent rims until I purchased this car. Corvette should be ashamed of themselves putting cheap rims on a car that cost this much money. All the C7 (GS, Z06) owners should get together to file a case action suit against them. That is the only way to get someone to listen. (*Id.*)

n. **November 16, 2018:** Three bent GS wheels. Don't use Sport mag ride setting anymore. One wheel straightened and bent again. Dealer (Penske) wouldn't cover it. Replacement wheel from Midwest $ 485 + shipping each. These wheels are noodles! (*Id.*)

o. **November 16, 2018:** My 4 bent rims had no tire damage, all rims were bent on inside bead, no rim damage other than being egg shaped, no tire or rim damage tells me the rims are not up to what roads in the USA are like. (*Id.*)

p. **November 16, 2018:** Bought my 2016 Z with 30K miles and a cracked rear wheel was found at inspection. (*Id.*)

q. **November 26, 2018:** Left Rear, Right Front, and Right Rear, on a Grand Sport Collector Edition. (*Id.*)

48. GM had superior and exclusive knowledge of the Rim Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

49. Plaintiff is informed and believes and based thereon alleges that before Plaintiff purchased his Class Vehicle, and since 2015, GM knew about the Rim Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to GM and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from GM dealers about the problem.

50. GM is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, GM conducts tests, including pre-sale durability testing, on incoming components, including the wheels, to verify the parts are free from defect and align with GM's specifications.[5] Thus, GM knew or should have known that the subject wheels were defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

51. Additionally, GM should have learned of this widespread defect from the sheer number of reports received from dealerships and from customer complaints directly to GM. GM's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

52. Defendant's warranty department similarly analyzes and collects

---

[5] Akweli Parker, *How Car Testing Works*, HOWSTUFFWORKS.COM, http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last viewed September 11, 2017).

data submitted by its dealerships in order to identify trends in its vehicles. It is Defendant's policy that when a repair is made under warranty the dealership must provide GM with detailed documentation of the problem and the fix employed to correct it. Dealerships have an incentive to provide detailed information to GM, because they will not be reimbursed for any repairs unless the justification is sufficiently detailed.

53.     The existence of the Rim Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle.  Had Plaintiff and other Class Members known of the Rim Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

54.     Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's wheels are safe, will function in a manner that will not pose a safety risk, and are free of defects. Plaintiff and Class Members further reasonably expect that GM will not sell or lease vehicles with known safety defects, such as the Rim Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect GM to fail to disclose the Rim Defect to them and to continually deny it.

**GM Has Actively Concealed the Rim Defect**

55.     Despite its knowledge of the Rim Defect in the Class Vehicles, GM actively concealed the existence and nature of the defect from Plaintiff and Class Members.  Specifically, GM failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

> (a)     any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the wheels;
>
> (b)     that the Class Vehicles, including the wheels, were not in

good in working order, were defective, and were not fit for their intended purposes; and

    (c)    that the Class Vehicles and the wheels were defective, despite the fact that GM learned of such defects as early as 2015.

56.    As discussed above, GM monitors its customers' discussions on online forums such as www.corvetteforum.com, and actively concealed the defect but by denying that there had been a "rash" of wheel failures, denying the existence of a defect, and blaming the customers for the problems.

57.    When consumers present their Class Vehicles to an authorized GM dealer for rim repairs or replacements, GM refuses to honor the 3-year, 36,000-mile warranty, telling the customers that the rim failures are the customers' fault.

58.    Accordingly, despite GM's knowledge of the Rim Defect, GM has caused Class Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' rims.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

60.    The Class and Sub-Class are defined as:

**Class**:   All individuals in the United States who purchased or leased any 2015 to present Chevrolet Corvette Z06 or 2017 to present Chevrolet Corvette Grand Sport vehicle.

**California Sub-Class**:  All members of the Class who reside in the State of California.

**CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

1

2

**Implied Warranty Sub-Class**:  All members of the Class who purchased or leased their vehicles in the State of California.

3

4

5

6

7

8

9

10

11

61.    Excluded from the Class and Sub-Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

12

13

14

15

16

17

18

62.    Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

19

20

21

22

23

24

25

63.    Typicality: Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by GM. The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective wheels. Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

26

27

28

64.    Commonality: There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting

1    Class Members individually. These common legal and factual issues include the

2    following:

           (a)    Whether Class Vehicles suffer from defects relating to the

3

4                     wheels;

5               (b)    Whether the defects relating to the wheels constitute an

6                     unreasonable safety risk;

7               (c)    Whether Defendant knows about the defects pertaining to the

8                     wheels and, if so, how long Defendant has known of the

9                     defect;

10              (d)    Whether the defective nature of the wheels constitutes a

11                    material fact;

12              (e)    Whether Defendant has a duty to disclose the defective nature

13                    of the wheels to Plaintiff and Class Members;

14              (f)    Whether Plaintiff and the other Class Members are entitled to

15                    equitable relief, including a preliminary and/or permanent

16                    injunction;

17              (g)    Whether Defendant knew or reasonably should have known of

18                    the defects pertaining to the wheels before it sold and leased

19                    Class Vehicles to Class Members;

20              (h)    Whether Defendant should be declared financially responsible

21                    for notifying the Class Members of problems with the Class

22                    Vehicles and for the costs and expenses of repairing and

23                    replacing the defective wheels;

24              (i)    Whether Defendant is obligated to inform Class Members of

25                    their right to seek reimbursement for having paid to diagnose,

26                    repair, or replace their defective wheels;

27              (j)    Whether Defendant breached the implied warranty of

28

merchantability pursuant to the Magnuson-Moss Warranty Act;

(k)     Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Berverly Act;

(l)     Whether Defendant breached its express warranties under UCC section 2301; and

(m)     Whether Defendant breached written warranties pursuant to the Magnuson-Moss Warranty Act.

65.    Adequate Representation: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and they intends to prosecute this action vigorously.

66.    Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FIRST CAUSE OF ACTION

## (Violation of California's Consumers Legal Remedies Act,

## California Civil Code § 1750, *et seq.*)

67.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

68.    Plaintiff brings this cause of action on behalf of himself and the CLRA Sub-Class.

69.    Defendant is a "person" as defined by California Civil Code § 1761(c).

70.    Plaintiff and CLRA Sub-class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

71.    By failing to disclose and concealing the defective nature of the wheels from Plaintiff and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their wheels had characteristics and benefits that they do not have and represented that the Class Vehicles and their wheels were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

72.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

73.    Defendant knew that the Class Vehicles and their wheels suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

74.    Because of their reliance on Defendant's omissions, owners and/or

lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the Rim Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' wheels are substantially certain to fail before their expected useful life has run.

75.    Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the wheels and/or the associated repair costs because:

(a)    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' wheels;

(b)    Plaintiff and Class Members could not reasonably have been expected to learn or discover that their wheels had a dangerous safety defect until it manifested; and

(c)    Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn of or discover the safety defect.

76.    In failing to disclose the defective nature of wheels, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

77.    The facts Defendant concealed from or failed to disclose to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiff and Class Members known that the Class Vehicles' wheels were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

78.    Plaintiff and Class Members are reasonable consumers who do not expect the wheels installed in their vehicles to exhibit problems such as the Rim

Defect. This is the reasonable and objective consumer expectation relating to a vehicle's wheels.

79.    Because of Defendant's conduct, Plaintiff and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as the Rim Defect.

80.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.

81.    Plaintiff and the Class are entitled to equitable relief.

82.    Plaintiff provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a). If Defendant fails to provide appropriate relief for its violations of the CLRA within 30 days, Plaintiff will seek monetary, compensatory, and punitive damages, in addition to the equitable and injunctive relief he seeks now.

## SECOND CAUSE OF ACTION

### (Violation of California Business & Professions Code § 17200, *et seq.*)

83.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

84.    Plaintiff brings this cause of action on behalf of themselves and the California Sub-Class.

85.    Because of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the Rim Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' wheels are substantially certain to fail before their expected useful life has run.

1    86.    California Business & Professions Code § 17200 prohibits acts of

2  "unfair competition," including any "unlawful, unfair or fraudulent business act

3  or practice" and "unfair, deceptive, untrue or misleading advertising."

4    87.    Plaintiff and Class Members are reasonable consumers who do not

5  expect their wheels to warp and crack.

6    88.    Defendant knew the Class Vehicles and their wheels were

7  defectively designed or manufactured, would fail prematurely, and were not

8  suitable for their intended use.

9    89.    In failing to disclose the Rim Defect, Defendant has knowingly and

10  intentionally concealed material facts and breached its duty not to do so.

11    90.    Defendant was under a duty to Plaintiff and Class Members to

12  disclose the defective nature of the Class Vehicles and their wheels because:

13        (a)    Defendant was in a superior position to know the true state of

14              facts about the safety defect in the Class Vehicles' wheels;

15              and

16        (b)    Defendant actively concealed the defective nature of the Class

17              Vehicles and their wheels from Plaintiff and the Class.

18    91.    The facts Defendant concealed from or failed to disclose to Plaintiff

19  and Class Members are material in that a reasonable person would have

20  considered them to be important in deciding whether to purchase or lease Class

21  Vehicles.  Had they known of the Rim Defect, Plaintiff and the other Class

22  Members would have paid less for Class Vehicles equipped with the subject

23  wheels or would not have purchased or leased them at all.

24    92.    Defendant continued to conceal the defective nature of the Class

25  Vehicles and their wheels even after Class Members began to report problems.

26    93.    Defendant's conduct was and is likely to deceive consumers.

27    94.    Defendant's acts, conduct, and practices were unlawful, in that they

28

1  constituted:

2    (a)    Violations of California's Consumers Legal Remedies Act;

3    (b)    Violations of the Song-Beverly Consumer Warranty Act;

4    (c)    Violations of the Magnuson-Moss Warranty Act; and

5    (d)    Breach of Express Warranty under California Commercial

6          Code section 2313.

7  95.    By its conduct, Defendant has engaged in unfair competition and

8  unlawful, unfair, and fraudulent business practices.

9  96.    Defendant's unfair or deceptive acts or practices occurred

10 repeatedly in Defendant's trade or business and were capable of deceiving a

11 substantial portion of the purchasing public.

12 97.    As a direct and proximate result of Defendant's unfair and deceptive

13 practices, Plaintiff and Class Members have suffered and will continue to suffer

14 actual damages.

15 98.    Defendant has been unjustly enriched and should be required to

16 make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the

17 Business & Professions Code.

18 **THIRD CAUSE OF ACTION**

19 **(Breach of Implied Warranty Pursuant to Song-Beverly**

20 **Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

21 99.    Plaintiff incorporates by reference the allegations contained in the

22 preceding paragraphs of this Complaint.

23 100.    Plaintiff brings this cause of action against Defendant on behalf of

24 himself and the Implied Warranty Sub-Class.

25 101.    Defendant was at all relevant times the manufacturer, distributor,

26 warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

27 know of the specific use for which the Class Vehicles were purchased or leased.

28

102.   Defendant provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their wheels suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

103.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their wheels, which were manufactured, supplied, distributed, and/or sold by GM, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their wheels would be fit for their intended use.

104.   Contrary to the applicable implied warranties, the Class Vehicles and their wheels at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective wheels.

105.   The alleged Rim Defect is inherent and was present in each Class Vehicle at the time of sale.

106.   Because of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the Rim Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' wheels are substantially certain to fail before their expected useful life has run.

107.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

### FOURTH CAUSE OF ACTION
### (For Breach of Express Warranty)

108.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

109.   Plaintiff brings this cause of action on behalf of themselves and on behalf of the Class, or, Alternatively, the California Sub-class, against Defendant.

110.   Defendant provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, Defendant's express warranty is an express warranty under California law.

111.   The wheels were manufactured and/or installed in the Class Vehicles by Defendant and are covered by the express warranty.

112.   In a section entitled "What is Covered," Defendant's express warranty provides in relevant part that "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." The warranty further provides that "Warranty repairs, including, including towing, parts, and labor, will be made at no charge" and "[t]o obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs."

113.   According to GM, the "Bumper-to-Bumper (Includes Tires) Coverage is for the first 3 years or 36,000 miles, whichever comes first."

114.   Defendant breached the express warranties by selling and leasing

Class Vehicles with wheels that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the wheels. In addition, when Defendant did agree to pay a portion of the costs, Defendant nevertheless breached the express warranty by simply replacing Plaintiff's and Class Members' defective wheels with similarly defective wheels, thus failing to "repair" the defect.

115.    Plaintiff was not required to notify GM of the breach or was not required to do so because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. Defendant was also on notice of the defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the wheels, and from other internal sources.

116.    As a direct and proximate cause of Defendant's breach, Plaintiff and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

117.    Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## FIFTH CAUSE OF ACTION

### (Breach of Written Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)

118.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

119.    Plaintiff brings this cause of action on behalf of themselves and the

1  Class against Defendant.

2      120.   The Class Vehicles are a "consumer product" within the meaning of

3  the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

4      121.   Plaintiff and Class Members are "consumers" within the meaning of

5  the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

6      122.   Defendant is a "supplier" and "warrantor" within the meaning of the

7  Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

8      123.   Defendant's express warranty is a "written warranty" within the

9  meaning of 15 U.S.C. § 2301(6).

10     124.   As set forth *supra* and incorporated by reference, Defendant

11  extended a 36-month, 36,000 mile Bumper-to-Bumper warranty.

12     125.   Defendant breached the express warranties by selling and leasing

13  Class Vehicles with wheels that were defective, requiring repair or replacement

14  within the warranty period, and refusing to honor the express warranty by

15  repairing or replacing, free of charge, the wheels. In addition, when Defendant

16  did agree to pay a portion of the costs, Defendant nevertheless breached the

17  express warranty by simply replacing Plaintiff's and Class Members' defective

18  wheels with similarly defective wheels, thus failing to "repair" the defect.

19     126.   Defendant's breach of the express warranties has deprived the

20  Plaintiff and Class Members of the benefit of their bargain.

21     127.   Defendant's breach of express warranties has deprived Plaintiff and

22  Class Members of the benefit of their bargain.

23     128.   The amount in controversy of Plaintiff's individual claims meets or

24  exceeds the sum or value of $25,000.  In addition, the amount in controversy

25  meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)

26  computed on the basis of all claims to be determined in this suit.

27     129.   Defendant has been afforded a reasonable opportunity to cure its

28

breach, including when Plaintiff and Class Members brought their vehicles in for diagnoses and repair of the wheels.

130.   As a direct and proximate cause of Defendant's breach of written warranties, Plaintiff and Class Members sustained and incurred damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

**SIXTH CAUSE OF ACTION**

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)**

131.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

132.   Plaintiff brings this cause of action on behalf of themselves and the Class against Defendant.

133.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

134.   Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

135.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

136.   GM impliedly warranted that the Class Vehicles were of merchantable quality and fit for use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their wheels were manufactured, supplied, distributed, and/or sold by GM would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their wheels would be fit for their intended use while the Class Vehicles were being

1  operated.

2      137.   Contrary to the applicable implied warranties, the Class Vehicles

3  and their wheels at the time of sale and thereafter were not fit for their ordinary

4  and intended purpose of providing Plaintiff and Class Members with reliable,

5  durable, and safe transportation. Instead, the Class Vehicles are defective,

6  including the defective design of their wheels.

7      138.   Defendant's breach of implied warranties has deprived Plaintiff and

8  Class Members of the benefit of their bargain.

9      139.   The amount in controversy of Plaintiff's individual claims meets or

10  exceeds the sum or value of $25,000. In addition, the amount in controversy

11  meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)

12  computed on the basis of all claims to be determined in this suit.

13      140.   Defendant has been afforded a reasonable opportunity to cure its

14  breach, including when Plaintiff and Class Members brought their vehicles in for

15  diagnoses and repair of the wheels.

16      141.   As a direct and proximate cause of Defendant's breach of implied

17  warranties, Plaintiff and Class Members sustained and incurred damages and

18  other losses in an amount to be determined at trial. Defendant's conduct

19  damaged Plaintiff and Class Members, who are entitled to recover actual

20  damages, consequential damages, specific performance, diminution in value,

21  costs, attorneys' fees, and/or other relief as appropriate.

22      142.   Because of Defendant's violations of the Magnuson-Moss Warranty

23  Act as alleged herein, Plaintiff and Class Members have incurred damages.

24                   **SEVENTH CAUSE OF ACTION**

25                   **(For Unjust Enrichment)**

26      143.   Plaintiff incorporates by reference the allegations contained in the

27  preceding paragraphs of this Complaint.

28

144.   Plaintiff brings this cause of action on behalf of themselves and the Class.

145.   As a direct and proximate result of Defendant's failure to disclose known defects, Defendant has profited through the sale and lease of the Class Vehicles.  Although these vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

146.   Additionally, as a direct and proximate result of Defendant's failure to disclose known defects in the Class Vehicles, Plaintiff and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

147.   Defendant has been unjustly enriched due to the known defects in the Class Vehicles through the use money paid that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiff and Class Members.

148.   As a result of the Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

## RELIEF REQUESTED

149.   Plaintiff, on behalf of himself and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

(a)   An order certifying the proposed Class and Sub-Classes, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(a)   A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the wheels, including the need for periodic maintenance;

(b)   An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class

Vehicles; compelling Defendant to issue a voluntary recall for the Class Vehicles pursuant to. 49 U.S.C. § 30118(a); compelling Defendant to remove, repair, and/or replace the Class Vehicles' defective wheels with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendant from selling the Class Vehicles with the misleading information; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(c)    A declaration requiring Defendant to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

(d)    An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial, except that currently, Plaintiff does not seek damages under the Consumers Legal Remedies Act;

(e)    Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

(f)    Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(g)    A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiff and Class Members;

(h)    An award of attorneys' fees and costs, as allowed by law;

1    (i)    An award of attorneys' fees and costs pursuant to California

2           Code of Civil Procedure § 1021.5;

3    (j)    An award of pre-judgment and post-judgment interest, as

4           provided by law;

5    (k)    Leave to amend the Complaint to conform to the evidence

6           produced at trial; and

7    (l)    Such other relief as may be appropriate under the

8           circumstances.

9                      **DEMAND FOR JURY TRIAL**

10        150.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff

11   demands a trial by jury of all issues in this action so triable.

12
     Dated:  March 31, 2020                 Respectfully submitted,
13
                                            Capstone Law APC
14

15

16                                          By: /s/ Steven R. Weinmann
                                               Steven R. Weinmann
17                                             Tarek H. Zohdy
                                               Cody R. Padgett
18                                             Trisha K. Monesi

19                                             Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# EXHIBIT 1

DocuSign Envelope ID: A068BDDC-187C-4145-B97B-D6A9B91B0472

1  Steven R. Weinmann (SBN 190956)
   Steven.Weinmann@capstonelawyers.com
2  Tarek H. Zohdy (SBN 247775)
   Tarek.Zohdy@capstonelawyers.com
3  Cody R. Padgett (SBN 275553)
   Cody.Padgett@capstonelawyers.com
4  Trisha K. Monesi (SBN 303512)
   Trisha.Monesi@capstonelawyers.com
5  Capstone Law APC
   1875 Century Park East, Suite 1000
6  Los Angeles, California 90067
   Telephone:    (310) 556-4811
7  Facsimile:    (310) 943-0396

8  Attorneys for Plaintiffs
   Ernest Holguin And Richard Barrington
9

10              **UNITED STATES DISTRICT COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12

13  ERNEST HOLGUIN and RICHARD          Case No.:
    BARRINGTON, individually, and on
14  behalf of a class of similarly situated   **DECLARATION OF RICHARD**
    individuals,                          **BARRINGTON IN SUPPORT OF VENUE**
15                                        **FOR CLASS ACTION COMPLAINT**
             Plaintiff,                   **PURSUANT TO CIVIL CODE § 1780(d)**
16
          v.
17                                        **DEMAND FOR JURY TRIAL**
    GENERAL MOTORS LLC, a Delaware
18  limited liability company,

19

20

21

22

23

24

25

26

27

28

---

DECLARATION OF RICHARD BARRINGTON IN SUPPORT OF VENUE FOR CLASS ACTION COMPLAINT

1

2                    **DECLARATION OF RICHARD BARRINGTON**

3          I, Richard Barrington, declare under penalty of perjury as follows:

4          1.      I make this declaration based upon my personal knowledge except as to those

5   matters stated herein that are based upon information and belief, and as to those matters, I

6   believe them to be true.  I am over the age of eighteen, a citizen of the State of California, and

7   a Plaintiff in this action.

8          2.      Pursuant to California Civil Code §1780(d), this Declaration is submitted in

9   support of Plaintiffs' Selection of Venue for the Trial of Plaintiffs' Cause of Action alleging

10  violation of California's Consumers Legal Remedies Act.

11         1.      I reside in Union City, California, which is in the County of Alameda.

12         3.      I purchased a 2018 Chevrolet Corvette Grand Sport equipped with OEM

13  Wheels from Wittmeier Chevrolet, an authorized Chevrolet dealer in Chico, CA.

14         4.      Based on the facts set forth herein, this Court is a proper venue for the

15  prosecution of Plaintiffs' Cause of Action alleging violation of California's Consumers Legal

16  Remedies Act because my 2018 Chevrolet Corvette Grand Sport is the subject of this lawsuit

17  is situated here and a substantial portion of the events giving rise to my claims occurred here.

18         5.      I declare under penalty of perjury under the laws of California and the United

19  States of America that the foregoing is true and correct.

20

21         Executed on March 31, 2020, in Union City, California.

22

23                                  RICHARD BARRINGTON

24                                  _____
                                    Richard Barrington

25

26

27

28

DECLARATION OF RICHARD BARRINGTON IN SUPPORT OF VENUE FOR CLASS ACTION COMPLAINT